IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

WEST VIRGINIA RIVERS COALITION,
WEST VIRGINIA HIGHLANDS
CONSERVANCY, OHIO VALLEY
ENVIRONMENTAL COALITION, and,
SIERRA CLUB

                Plaintiffs,

v.                                                                                                  CIVIL ACTION NO.  3:14-cv-24237

APPALCHIAN POWER COMPANY
d/b/a/ AMERICAN ELECTRIC POWER

                Defendant.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR CIVIL PENALTIES

## INTRODUCTION

1. This is an action for declaratory judgment and mandatory injunctive relief and for civil penalties against defendant American Electric Power ("AEP"). Plaintiffs allege violations of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* (hereinafter "The Clean Water Act" or the "CWA").

2. As detailed below, Plaintiffs allege that Defendant has discharges and continues to discharge both selenium and mercury—pollutants designated as toxic by the U.S. Environmental Protection Agency ("EPA"), 40 C.F.R. § 401.15—into waters of the United States in persistent violation of the conditions and limitations of a West Virginia/National Pollution Discharge Elimination System ("WV/NPDES") Permit issued to Defendant by the State of West Virginia

1

pursuant to § 402 of the CWA (33 U.S.C. § 1342).  Such discharges, exceeding the permitted limits, are also violations of § 301 of the CWA (33 U.S.C. § 1311).

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. § 1311 (federal question jurisdiction) and 33 U.S.C. § 1365 (The Clean Water Act's citizen suit provision) this Court has jurisdiction over this action.

4. By letter sent certified mail and postmarked November 7, 2013, Plaintiffs gave notice of violations and their intent to file suit to Defendant, the EPA and the West Virginia Department of Environmental Protection ("WVDEP") as required by § 505(b)(1)(A), 33 U.S.C. § 1365(b)(1)(a).

5. More than sixty days have passed since the notice was served and neither EPA nor the WVDEP has commenced an administrative penalty action under Section 309(g) of the CWA, 33 U.S.C. § 1319(g), or comparable state law to redress violations prior to the issuance of the November 7, 2013 notice letter.

6. Venue in this District and in this Division is proper pursuant to 33 U.S.C. § 1365(c)(1) because the source of the Clean Water Act violations—Outlet 003 of WV/NPDES Permit WV0001074, for the John Amos Power Plant—is located in Putnam County, West Virginia.

## PARTIES

7. Defendant is a person within the meaning of § 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5).

8. At all relevant times, Defendant AEP owned and operated the John Amos Power Plant, which is regulated pursuant to Permit WV0001074, and which discharges pollutants from Outlet 003 into the Kanawha River.

9. Plaintiff West Virginia Rivers Coalition makes its mission the conservation and

restoration of West Virginia's exceptional rivers and streams. It not only seeks preservation of high quality waters but also the improvement of waters that should be of higher quality. It has approximately 2,500 members.

10. Plaintiff West Virginia Highlands Conservancy, Inc. is a nonprofit organization incorporated in West Virginia. It has approximately 2,000 members. It works for the conservation and wise management of West Virginia's natural resources.

11. Plaintiff Ohio Valley Environmental Coalition is a nonprofit organization incorporated in Ohio. Its principal place of business is in Huntington, West Virginia. It has approximately 1,500 members. Its mission is to organize and maintain a diverse grassroots organization dedicated to the improvement and preservation of the environment through education, grassroots organizing, coalition building, leadership development, and media outreach. The Coalition has focused on water quality issues and is a leading source of information about water pollution in West Virginia.

12. Plaintiff Sierra Club is a nonprofit corporation incorporated in California, with more than 600,000 members nationwide including over 2,100 members who reside in West Virginia and belong to its West Virginia Chapter. The Sierra Club is dedicated to exploring, enjoying, and protecting the wild places of the Earth; to practicing and promoting the responsible use of Earth's resources and ecosystems; to educating and enlisting humanity to protect and restore the quality of the natural and human environment; and to using all lawful means to carry out these objectives. The Sierra Club's concerns encompass the exploration, enjoyment and protection of surface waters in West Virginia.

13. Plaintiffs have members, including Cynthia Ellis and Julian Martin who use and enjoy

the Kanawha River in the area affected by Defendant's discharges. Plaintiffs' members boat, fish, wade, observe wildlife, and/or otherwise use the waters affected by Defendant's discharges and are harmed by the high levels of pollutants that Defendant is discharging in violation of its permit. Plaintiffs' members refrain from swimming, wading, fishing, boating or enjoyment of other activities they engage in as a result of concerns over Defendant's pollutants. Plaintiffs members are also concerned about the impacts of pollution from discharges on their families, neighbors and local wildlife. Many of Plaintiffs' members have particular concerns about the impacts of mercury and selenium pollution in the Kanawha River. Cynthia Ellis is an avid birder, who is worried about the bio-accumulative effects of mercury in the environment, and its ability to harm wildlife up the food chain. Julian Martin is well aware of research showing that selenium bio-accumulates in fish and is worried about the effects of the pollutant in the Kanawha River.

14. At all relevant times, Plaintiffs were and are "persons" as that term is defined by the Clean Water Act, 33 U.S.C. § 1362(5).

## STATUTORY AND REGULATORY FRAMEWORK

15. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant by any person" into waters of the United States, except in compliance with the terms and conditions of a permit, such as a NPDES permit issued by the EPA or an authorized state pursuant to § 402 of the CWA, 33 U.S.C. § 1342.

16. Section 402(a) of the CWA, 33 U.S.C. § 1342(a) provides that the permit issuing authority may issue a NPDES Permit that authorizes the discharge of any pollutant directly into waters of the United States, upon the condition that such discharge will meet all applicable provisions of the CWA.

17. Section 402(a) of the CWA, 33 U.S.C. § 1342, directs the Administrator of EPA to prescribe conditions for NPDES permits to ensure compliance with the requirements of the CWA, including conditions in data and information collection, reporting and other such requirements as the Administrator deems appropriate.

18. Effluent limitations, as defined in Section 502(11) of the CWA, 33 U.S.C. § 1362(11), are restrictions on quantity, rate and concentration of chemical, physical, biological, and other constituents of wastewater discharges. Effluent limitations are among the conditions and limitations prescribed in NPDES Permits issued under Section 402(a) of the CWA, 33 U.S.C. § 1342(a).

19. Section 303(a) of the CWA, 33 U.S.C. § 1313(a), requires that states adopt ambient water quality standards and establish water quality criteria for particular water bodies which will protect the designated uses of the water. When technology-based effluent limitations are insufficient to keep receiving waters within those levels, the permit must include more stringent water quality based limits ("WQBELs") which reflect the water quality standards and criteria. 33 U.S.C. § 1311(b)(1)(C).

20. At all times relevant to this complaint, the State of West Virginia has been authorized by EPA to administer an NPDES program for regulating the discharges of pollutants into waters of West Virginia. Permits issued under this program are known as WV/NPDES permits.

21. Holders of WV/NPDES Permits are required to monitor their discharges and report their average monthly discharges and maximum daily discharges on a monthly or quarterly basis. Those reports are called "Discharge Monitoring Reports" or "DMRs."

22. Section 505(a) of the CWA, 33 U.S.C. § 1365(a), authorizes any "citizen" to "commence

a civil action on his own behalf. . . against any person . . . who is alleged to be in violation of . . . an effluent standard or limitation under this chapter."

23. Section 505(f) of the CWA, 33 U.S.C. § 1365(f), defines an "effluent standard or limitation under this chapter," for purposes of the citizen suit provision in § 505(a) of the CWA, 33 U.S.C. § 1365(a), to mean, among other things, an unlawful act under Section 301(a), 33 U.S.C. § 1311(a) of the CWA, a WQBEL and the requirements of "a permit or condition thereof issued" under § 402, U.S.C. § 1342, of the CWA.

24. In an action brought under Section 505(a) of the CWA, 33 U.S.C. § 1365(a), the district court has jurisdiction to order the defendant to comply with the CWA and to assess civil penalties under § 309(d) of the CWA, 33 U.S.C. § 1365(d). See 33 U.S.C. § 1365(a).

25. Section 309(d) of CWA 33 U.S.C. § 1319(d), provides, that any person who violates § 301 of the CWA, 33 U.S.C. § 1311, or violates any permit condition or limitation in a permit issued pursuant to § 402 of the CWA, 33 U.S.C. § 1342, shall be subject to a civil penalty payable to the United States of up to $25,000 per day for each violation.

26. Pursuant to the Federal Civil Penalties Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, the Court may assess a civil penalty of $37,500 per day for each violation that occurred after January 12, 2009.

27. The costs avoided from non-compliance are one factor to be considered in the calculation of civil penalties. Defendant has avoided substantial costs since beginning its illegal discharges because it has not implemented the necessary treatment measures that would bring it into compliance.

28. Under § 5059d) of the CWA, 33 U.S.C. § 1365(d), the court "may award costs of

6

litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such an award is appropriate."

## **FACTS**

29. At all relevant times, Defendant has held WV/NPDES Permit Number WV0001074 to regulate water pollution from its John Amos Power Plant.

30. WV/NPDES Permit Number WV0001074 allows the discharge of pollutants, within specified limits into the Kanawha River. The Kanawha River is a navigable water of the United States.

31. Permit WV0001074 was most recently renewed in 2007. This permit placed limits on Outlet 003 for selenium, mercury, and other pollutants. Defendant appealed these limits to the West Virginia Environmental Quality Board. In July 2009 the WVDEP modified the permit and extended the compliance schedule at Outlet 003 through March 2011. WVDEP has since issued Administrative Order Nos. 7071 and 7213, which further extended the compliance schedule for Outlet 003. These administrative orders and subsequent amendments have extended the compliance schedule at least 5 times and for more than four and a half years passed the original deadline for compliance. Based on the administrative orders the current deadline for final effluent limitations at Outlet 003 is April 30, 2014.

32. Upon information and belief neither Administrative Order Nos. 7071 nor 7213, nor any of the amendments to those orders were ever circulated for public comment or EPA review.

33. The DMRs that Defendant has submitted to WVDEP indicate that Defendant has discharged arsenic and selenium in violation of the applicable permit limits.

| Outfall 003 | | | | | | |
|---|---|---|---|---|---|---|
| Parameter | Date | Type | Permit Limit | Reported | Unit | Violations |
| Mercury, Total (As Hg) | 1/31/2011 | Avg. Monthly | 0.00983 | 0.395 | ug/l | 31 |
| Mercury, Total (As Hg) | 1/31/2011 | Max. Daily | 0.01971 | 0.672 | ug/l | 1 |
| Mercury, Total (As Hg) | 5/31/2011 | Avg. Monthly | 0.00983 | 0.0392 | ug/l | 31 |
| Mercury, Total (As Hg) | 12/31/2011 | Avg. Monthly | 0.00983 | 0.0106 | ug/l | 31 |
| Mercury, Total (As Hg) | 1/31/2012 | Avg. Monthly | 0.00983 | 0.0104 | ug/l | 31 |
| Mercury, Total (As Hg) | 4/30/2012 | Avg. Monthly | 0.00983 | 0.0113 | ug/l | 30 |
| Mercury, Total (As Hg) | 5/31/2012 | Avg. Monthly | 0.00983 | 0.0187 | ug/l | 31 |
| Mercury, Total (As Hg) | 6/30/2012 | Avg. Monthly | 0.00983 | 0.0805 | ug/l | 30 |
| Mercury, Total (As Hg) | 6/30/2012 | Max. Daily | 0.01971 | 0.0805 | ug/l | 1 |
| Mercury, Total (As Hg) | 7/31/2012 | Avg. Monthly | 0.00983 | 0.0141 | ug/l | 31 |
| Mercury, Total (As Hg) | 8/31/2012 | Avg. Monthly | 0.00983 | 0.019 | ug/l | 31 |
| Mercury, Total (As Hg) | 10/31/2012 | Avg. Monthly | 0.00983 | 0.036 | ug/l | 31 |
| Mercury, Total (As Hg) | 10/31/2012 | Max. Daily | 0.01971 | 0.036 | ug/l | 1 |
| Mercury, Total (As Hg) | 11/30/2012 | Avg. Monthly | 0.00983 | 0.178 | ug/l | 30 |
| Mercury, Total (As Hg) | 11/30/2012 | Max. Daily | 0.01971 | 0.338 | ug/l | 1 |
| Mercury, Total (As Hg) | 12/31/2012 | Avg. Monthly | 0.00983 | 0.0185 | ug/l | 31 |
| Mercury, Total (As Hg) | 1/31/2013 | Avg. Monthly | 0.00983 | 0.0128 | ug/l | 31 |
| Mercury, Total (As Hg) | 2/28/2013 | Avg. Monthly | 0.00983 | 0.066 | ug/l | 28 |
| Mercury, Total (As Hg) | 2/28/2013 | Max. Daily | 0.01971 | 0.066 | ug/l | 1 |
| Mercury, Total (As Hg) | 3/31/2013 | Avg. Monthly | 0.00983 | 0.0321 | ug/l | 31 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Mercury, Total (As Hg) | 3/31/2013 | Max. Daily | 0.01971 | 0.0321 | ug/l | 1 |
| Mercury, Total (As Hg) | 6/30/2013 | Max Daily | 0.01971 | 0.0366 | ug/l | 1 |
| Mercury, Total (As Hg) | 6/30/2013 | Avg. Monthly | 0.00983 | 0.0366 | ug/l | 30 |
| Mercury, Total (As Hg) | 7/31/2013 | Avg. Monthly | 0.00983 | 0.0111 | ug/l | 31 |
| Mercury, Total (As Hg) | 9/30/2013 | Avg. Monthly | 0.00983 | 0.0111 | ug/l | 30 |
| Mercury, Total (As Hg) | 10/31/2013 | Avg. Monthly | 0.00983 | 0.0137 | ug/l | 31 |
| Mercury, Total (As Hg) | 11/30/2013 | Avg. Monthly | 0.00983 | 0.0181 | ug/l | 30 |
| Mercury, Total (As Hg) | 12/31/2013 | Avg. Monthly | 0.00983 | 0.0182 | ug/l | 31 |
| Mercury, Total (As Hg) | 1/31/2014 | Avg. Monthly | 0.00983 | 0.0099 | ug/l | 31 |
| Selenium, Total Recoverable | 7/31/2012 | Avg. Monthly | 0.0225 | 0.0374 | mg/l | 31 |
| Selenium, Total Recoverable | 9/30/2012 | Avg. Monthly | 0.0225 | 0.0292 | mg/l | 30 |
| Selenium, Total Recoverable | 11/30/2012 | Avg. Monthly | 0.0225 | 0.0242 | mg/l | 30 |
| Selenium, Total Recoverable | 4/30/2013 | Avg. Monthly | 0.0225 | 0.0246 | mg/l | 30 |
| Selenium, Total Recoverable | 5/31/2013 | Avg. Monthly | 0.0225 | 0.0258 | mg/l | 31 |
| | | | | **Total Outfall Violations** | | **832** |

## CLAIMS FOR RELIEF

(Effluent Discharge Violations of WV/NPDES Permit Number WV0001074)

34. Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 33 supra.

35. Defendant's wastewater discharges identified in the above paragraphs are discharges from a point source into navigable waters of the United States within the meaning of § 301 of the CWA,

9

33 U.S.C. § 1311, which prohibits the discharge of any pollutant by any person, except in compliance with a permit.

36. Administrative Order Nos. 7071, 7213 and amendments thereto, were not effective to modify the compliance schedule for selenium and mercury in Permit WV0001074 because they did not got through the required notice and comment procedure. Pursuant to W.Va. C.S.R. § 47-10-9.2.b, an extension of a compliance schedule can only be performed through a permit modification that adheres to the notice and comment requirements of WVDEP's regulations.

37. Because the compliance schedules in Defendant's permit were never properly extended beyond March of 2011, limitations for selenium and mercury are effective as of that date. See, Ohio Valley Environmental Coalition v. Apogee Coal Co., LLC, 555 F.Supp.2d 640, 645-647 (S.D. W.Va. 2008).

38. Each and every discharge in excess of the effluent limitations in WV/NPDES Permit Number WV0001074 is actionable under § 505(a)(1) of the Clean Water Act. 33 U.S.C. § 1365(a)(1).

39. A violation of an average monthly effluent limitation in a permit is considered to be a violation on each and every day of that month.

40. Defendant's DMRs establish that the company has violated the monthly average or daily maximum effluent limitations for mercury at Outlet 003 have been violated at least 29 times since limits became effective. DMRs further show that selenium limits at Outlet 003 have been violated at least 5 times since limits became effective. All of these violations amount to a cumulative 832 days of violation.

41. On information and belief, Plaintiffs allege that Defendant is in continuing and/or

intermittent violation of the effluent limitations in WV/NPDES Permit Number WV0001075 because Defendant has taken no meaningful action to eradicate the underlying cause of the violations. Unless enjoined, Defendant will remain in continuing and/or intermittent violation of the Clean Water Act.

    42. Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), Defendant is liable for civil penalties of up to $37,500 for each day of violation of its effluent limits.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that this Court enter an Order:

    (1) Declaring that Defendant Appalachian Power Co., d/b/a/ American Electric Power, has violated and is in continuing violation of the Clean Water At;

    (2) Enjoining Defendant from operating its facilities in such a manner as will result in further violations of the effluent limitations in WV/NPDES Permit Number WV0001074;

    (3) Ordering Defendant to immediately comply with all effluent limitations, monitoring and reporting requirements, and other terms and conditions of WV/NPDES Permit Number WV0001074;

    (4) Ordering Defendant to pay appropriate civil penalties up to $37,500 per day for each violation;

    (5) Awarding Plaintiffs' attorney and expert witness fees and all other reasonable expenses incurred in pursuit of this action;

    (6) Granting other such relief as this Court deems proper.

                                       Respectfully submitted,

                                       */s/ J. Michael Becher*
                                       J. Michael Becher (Bar No. 10588)

Joseph M Lovett (Bar No. 6926)
Appalachian Mountain Advocates
P.O. Box 507
Lewisburg, WV 24901
mbecher@appalmad.org
304-382-4798

*Counsel for West Virginia Rivers Coalition, West Virginia Highlands Conservancy, Ohio Valley Environmental Coalition, and Sierra Club.*